IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH JUISTI                 :          CIVIL ACTION
                              :
            v.                :
                              :
CITY OF CHESTER, et al.       :          NO. 18-2317

MEMORANDUM

Bartle, J.                                    October 22, 2018

Before the court are the motions of defendants to
dismiss the complaint for failure to state a claim under Rule
12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff Joseph Juisti ("Juisti") brings this action
against defendants the City of Chester, Mayor Thaddeus Kirkland,
Police Commissioner Otis Blair, Chief James E. Nolan IV, Major
Steven Gretsky, Captain Marilyn Lee, and Captain William Shaw
for reverse racial discrimination and retaliation in violation
of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. §§ 2000e et seq., disability discrimination and
retaliation in violation of the Americans with Disabilities Act
of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., violation of
constitutional rights under 42 U.S.C. §§ 1983 and 1985(2),
intentional infliction of emotional distress, and civil
conspiracy.  Juisti also alleges a claim against his union,
defendant Fraternal Order of Police William Penn Lodge 19
("FOP"), for breach of the duty of fair representation.

Finally, he asserts claims against Lieutenant Randy Bothwell in his capacity as FOP president for violation of Juisti's constitutional rights under 42 U.S.C. §§ 1983 and 1985(e), intentional infliction of emotional distress, civil conspiracy, and breach of the duty of fair representation.

I

When deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

II

The following factual allegations from plaintiff's amended complaint are taken as true for present purposes.

Juisti, who is Caucasian, was hired in or about April 2013 as a patrolman for the City of Chester Police Department, which is predominantly African American. Juisti quickly clashed with one of immediate supervisors, defendant Captain Marilyn Lee ("Lee"), who is African American. Juisti alleges that Lee consistently denied him overtime in favor of other officers who were African American. During his employment with the City, Juisti reported Lee for misconduct on two occasions when she purportedly warned suspects in order to allow them to evade arrest, but Lee was never disciplined. Juisti further asserts that on one occasion, Lee deliberately slammed her shoulder into Juisti while he was exiting an elevator.

In November 2013, Juisti suffered from a stroke which resulted in vision impairment. As a result, Juisti received prescription sunglasses to wear both inside and outside. In July 2014, after Juisti returned to work, Lee mocked Juisti's prescription glasses and commented "Is it sunny in here?" when Juisti wore the glasses indoors.

Juisti avers that he was mocked and harassed by Lee and defendant Captain William Shaw ("Shaw") for being a "midget," being on "steroids," and for having a sibling born with severe mental handicaps and defects. Shaw and others played internet videos in front of Juisti of what they called "retarded midgets" in an attempt to make Juisti feel

uncomfortable.  Shaw also pinched Juisti's arm on one occasion, causing bruising and pain.

In 2017, Juisti raised the behavior of Lee and Shaw to the attention of his supervisors including defendants Major Steven Gretsky ("Gretsky"), Chief James E. Nolan IV ("Nolan"), and Commissioner Otis Blair ("Blair").  Juisti reported that they took no action and that instead he was labeled as a "whiner" and a "troublemaker."  He was also advised that Lee was protected by the Mayor, defendant Thaddeus Kirkland ("Kirkland").

In 2017, Lee began to schedule Juisti for the worst shifts, either alone or with inexperienced officers, and in the most dangerous neighborhoods.  When Juisti protested, Lee responded by disciplining Juisti for refusing to follow proper procedures and for failing to follow orders.  The discipline requested by Lee was confirmed by defendant Gretsky in a memo dated March 7, 2017.

On March 21, 2017, Juisti filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC").  The charge was received by the City of Chester on March 27, 2017.  Four days later, on March 31, Juisti was suspended without pay for three days for "conduct unbecoming an officer" due to his earlier disagreement with Lee.  Before this time Juisti had received only one instance of discipline, which

was a verbal reprimand due to a misunderstanding with other officers.

Lee and Shaw continued to assign Juisti undesirable shifts, including dangerous calls without backup. Defendants also started to scrutinize Juisti's work unnecessarily and to reexamine his cases for errors. Blair began to respond personally to and inspect calls to which Juisti was assigned. Blair would then issue orders to Juisti which were not supported by facts or were against standard protocol.

On April 24, 2017, Juisti was suspended for a second time. This suspension was without pay for five days and was given by defendant Shaw. Shaw reported that Juisti left his beat without permission and without informing anyone of his whereabouts. On this date Juisti had requested permission to go to the Delaware County Criminal Investigation Division ("CID") to report harassment and his earlier suspension. After Shaw denied the request and ordered him to remain on patrol, Juisti disregarded the order and informed Shaw that he was on his way to the CID.

On May 2, 2017, Blair called Juisti to his office for a meeting along with defendants Nolan and Gretsky, and another officer. Blair stated to Juisti: "I have been told by two sources that you have been talking about me and stated I should watch my back." When Juisti denied this accusation, Blair

-5-

responded that he had "reliable" sources and told Juisti to "knock it off." Blair also stated "I don't care" when Juisti told Blair he would like his lawyer present for any future meetings. On May 4, 2017, Blair told Juisti "I'm going to kill you" after Juisti wrecked a patrol car after a high-speed pursuit that resulted in four arrests. Blair also remarked to Juisti that he was illegally parked despite the fact that other officers routinely used the spot and were not reprimanded.

Meanwhile, Juisti met with defendant Mayor Kirkland twice in 2017, including on or about May 3, 2017. During these meetings, Juisti raised the alleged harassment by Lee and Shaw, his suspensions and other retaliation by Gretsky and Blair, and the inaction by defendants Nolan, Bothwell, and the FOP. Kirkland instructed Juisti "not to worry about any more suspensions" and promised that future requests for discipline "will all go through me."

Despite Kirkland's assurances, on May 31, 2017, Juisti was suspended for a third time. Sergeant El'lan Morgan ("Morgan"), who is not a party to this action, requested the suspension because Juisti had allegedly made a false notation on a prisoner checklist. Defendant Gretsky recommended the suspension and defendant Blair approved it. The suspension was for seven days without pay. Thereafter, Morgan informed Juisti that she did not want to write up Juisti, that he had done

nothing wrong, and that she had been instructed to discipline Juisti by defendants Blair and Gretsky. According to Juisti, another officer who engaged in similar conduct received only a verbal reprimand.

In July 2017, Juisti was the subject of a citizen complaint filed by an individual whom Juisti arrested. Juisti was investigated, but the complaint was withdrawn by the arrestee several days later. Later, in a sworn affidavit filed on January 27, 2018 in connection with his criminal matter, the arrestee stated he had been instructed by defendant Blair to file the citizen complaint against Juisti.

On August 21, 2017, Blair advised Juisti that he could not wear his prescription sunglasses inside. When Juisti protested, Blair stated that the white frame color of the sunglasses was inappropriate and made Juisti "look like the terminator." Juisti was permitted to wear sunglasses with a black frame, which he did in fact obtain and wear. Other officers, particularly African American officers, regularly wore sunglasses of various colors and without prescription, without any reprimand. As a result, Juisti filed with the EEOC on October 1, 2017 a second complaint alleging disability discrimination. In November 2017, when Juisti protested the ongoing harassment to Captain Shaw, the latter responded: "oh

well, would you please leave then, go somewhere else or wait until you have enough time and retire."

On January 11, 2018, Juisti discovered that someone had accessed his patrol vehicle and written "douche bag" on his hat. Thereafter Juisti considered himself constructively discharged due to discrimination, retaliation, and hostile work environment, and took leave from work. He has been diagnosed with anxiety, depression, and post-traumatic stress disorder as a result of these incidents.

During his employment with the City, Juisti filed grievances with his union, the FOP. In these grievances Juisti challenged his suspensions and also asserted that he was subject to discriminatory and retaliatory actions. According to Juisti, the FOP never addressed these grievances. During a meeting with Juisti and Blair, Bothwell stated that the FOP did not have to address Juisti's grievances because Juisti had retained an attorney. Juisti also asserts that Bothwell instructed members of the FOP to document every interaction with him.

III

We begin with plaintiff's claims against the individual defendants in Counts I, II, and III of the complaint. In Count I, Juisti alleges reverse racial discrimination in violation of Title VII against the City of Chester as well as Blair and Lee. In Count II, Juisti alleges violation of the ADA

-8-

by the City of Chester and Blair.  In Count III, Juisti alleges
retaliation under Title VII and the ADA against the City as well
as Kirkland, Blair, Nolan, Gretsky, Lee, and Shaw.

Individual employees cannot be held liable under Title
VII.  See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d
1061, 1077-78 (3d Cir. 1996).  Similarly, while it has not been
addressed directly by our Court of Appeals, the consensus view
among district courts within this circuit and other courts of
appeals is that individual liability cannot be imposed under the
ADA.  See Douris v. Schweiker, 229 F. Supp. 2d 391, 397 (E.D.
Pa. 2002).  Juisti does not challenge the dismissal of his Title
VII and ADA claims against the individual defendants.

Accordingly, the motion to dismiss the claims against
the individual defendants in Counts I, II, and III of the
complaint will be granted.

IV

We turn next to Juisti's claim for retaliation against
the City of Chester under the ADA in Count III of the complaint.
To state a claim for retaliation under the ADA, Juisti must
allege the following:  "(1) protected employee activity; (2)
adverse action by the employer either after or contemporaneous
with the employee's protected activity; and (3) a causal
connection between the employee's protected activity and the
employer's adverse action."  Williams v. Phila. Hous. Auth.

Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (quoting Fogleman
v. Mercy Hosp., Inc., 283 F.3d 561, 567–68 (3d Cir. 2002)).

In determining whether alleged retaliatory conduct
constitutes adverse action, we must employ an objective
standard.  We must consider whether "a reasonable employee would
have found the challenged action materially adverse, which in
this context means it well might have dissuaded a reasonable
worker from making or supporting a charge of discrimination."
Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68
(2006) (internal citations and quotations omitted).  As the
Supreme Court has explained:

> We speak of material adversity because we
> believe it is important to separate
> significant from trivial harms.  Title VII,
> we have said, does not set forth a general
> civility code for the American workplace.
> An employee's decision to report
> discriminatory behavior cannot immunize that
> employee from those petty slights or minor
> annoyances that often take place at work and
> that all employees experience.

Id. (internal citations and quotations omitted).

Juisti engaged in protected activity under the ADA
when he filed his EEOC complaint alleging disability
discrimination on October 1, 2017.  Juisti alleges that in
November 2017, after he filed this EEOC complaint, defendant
Shaw declined to take action when Juisti complained about
name-calling and overtime assignments.  Shaw allegedly responded

-10-

to Juisti's complaints: "oh well, would you please leave then, go somewhere else or wait until you have enough time to retire." He also alleges that in January 2018, an unknown person wrote "douche bag" on his hat. While Juisti may have genuinely found these two incidents distressing, they do not rise to the level of materiality required to qualify as adverse action sufficient to state a claim for retaliation when considered under the objective standard established in White.[1] See Shaner v. Synthes, 204 F.3d 494, 506 (3d Cir. 2000); Larkin v. Methacton Sch. Dist., 773 F. Supp. 2d 508, 538 (E.D. Pa. 2011). There is also no indication that they were causally linked to the filing of Juisti's EEOC complaint alleging disability discrimination.

Accordingly, Count III of the complaint will be dismissed to the extent it alleges retaliation under the ADA.

V

In Count IV of the complaint, Juisti alleges a claim against defendants Kirkland, Blair, Nolan, Gretsky, Lee, Shaw, and Bothwell for violation of 42 U.S.C. § 1983. In Count V of the complaint, Juisti alleges a claim against the City of

---

1. Juisti also alleges that defendants assigned him less desirable shifts, denied him overtime, and over-scrutinized his work. However, by Juisti's own assertions this conduct began well before he filed his charge of disability discrimination with the EEOC and thus there is no evidence that such actions were causally connected to his protected activity.

-11-

Chester for violation of 42 U.S.C. § 1983.  That statute

provides:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes to
> be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.  "By itself, Section 1983 does not create any

rights, but provides a remedy for violations of those rights

created by the Constitution or federal law."  Morse v. Lower

Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997) (citing

Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  To state a

claim, "plaintiff must show that defendants, acting under color

of state law, deprived him of a right secured by the

Constitution or the laws of the United States."  Id.

Here, Juisti's § 1983 claims are based on an alleged

violation of his procedural due process rights under the

Fourteenth Amendment to the United States Constitution in

connection with his constructive discharge.  The Fourteenth

Amendment provides in relevant part:

> No State shall make or enforce any law which
> shall abridge the privileges or immunities
> of citizens of the United States; nor shall
> any State deprive any person of life,

-12-

> liberty, or property, without due process of
> law; nor deny to any person within its
> jurisdiction the equal protection of the
> laws.

U.S. Const. amend. XIV, § 1.  To state a claim for deprivation

of procedural due process under § 1983, a plaintiff must allege

that:  "(1) he was deprived of an individual interest that is

encompassed within the Fourteenth Amendment's protection of

'life, liberty, or property'[;] and (2) the procedures available

to him did not provide 'due process of law.'"  Hill v. Borough

of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (citing Alvin v.

Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

        Juisti concedes that, as an at-will employee, he did

not have a property interest in his employment sufficient to

trigger due process concerns.  See id.  However, Juisti may

maintain a § 1983 claim based on an alleged deprivation of a

liberty interest in his reputation, which would require "a

stigma to his reputation plus deprivation of some additional

right or interest."  Id. at 235-36.  "In the public employment

context, [this] 'stigma-plus' test has been applied to mean that

when an employer 'creates and disseminates a false and

defamatory impression about the employee in connection with his

termination,' it deprives the employee of a protected liberty

interest."  Id. at 236 (quoting Codd v. Velger, 429 U.S. 624,

628 (1977)).  "The creation and dissemination of a false and

defamatory impression is the 'stigma,' and the termination is the 'plus.'" Id. If such deprivation occurs, an employee is entitled to a name-clearing hearing. Id.

To satisfy the "stigma" prong of the test, Juisti must allege that the purportedly stigmatizing statements were made publicly and were false. Id. He also must establish that the statements were made "in connection with" his constructive discharge, meaning that the statements were "so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye." Paterno v. Pa. State Univ., 688 F. App'x 128, 132 (3d Cir. 2017) (quoting Ulrich v. City & Cty. of San Francisco, 308 F.3d 968, 983 (9th Cir. 2002)); see also Hill, 455 F.3d at 236.

Here, Juisti points to the three suspensions in his file, which were issued on March 31, April 24, and May 31, 2017. These suspensions were for conduct unbecoming an officer and for failure to follow orders. Our Court of Appeals has instructed that simply placing material into an employee's personnel file does not constitute public dissemination as required to support a stigma-plus claim. See Copeland v. Phila. Police Dep't, 840 F.2d 1139, 1148 (3d Cir. 1988); Kocher v. Larksville Borough, 548 F. App'x 813, 820-21 (3d Cir. 2013). Juisti has not alleged that the record of his suspensions or any other potentially defamatory statement was actually disseminated by defendants to

-14-

members of the public.  Moreover, there is nothing to suggest

that a reasonable person would believe these suspensions were in

connection with Juisti's constructive discharge, which occurred

over seven months later, in January 2018.  Thus, Juisti has

failed to allege sufficiently a violation of his procedural due

process rights under the Fourteenth Amendment.

To the extent Juisti predicates his § 1983 claim

against the City on alleged discrimination and retaliation under

Title VII and the ADA, his claim also fails.  Because Title VII

and the ADA provide a comprehensive remedial scheme, a plaintiff

may not rely on § 1983 to remedy violations of those statutes.

Williams v. Pa. Human Relations Comm'n, 870 F.3d 294, 299 (3d

Cir. 2017).

Moreover, Juisti has failed to satisfy the "rigorous

standards of culpability and causation required for municipal

liability."  McTernan v. City of York, 564 F.3d 636, 658 (3d

Cir. 2009) (internal citation and quotation mark omitted).  It

is well-established that "[w]hen a suit against a municipality

is based on § 1983, the municipality can only be liable when the

alleged constitutional transgression implements or executes a

policy, regulation, or decision officially adopted by the

governing body or informally adopted by custom."  Beck v. City

of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996) (citing Monell v.

Dep't of Social Servs. New York City, 436 U.S. 658, 98 S.Ct.

-15-

2018, 56 L.Ed.2d 611 (1978)).  Here, Juisti fails to identify a

specific policy or custom of the City of Chester that caused the

alleged violation of his constitutional rights.  See McTernan,

564 F.3d at 658.  He has also failed to allege a specific

deficiency in training sufficient to establish a failure to

train that could be properly characterized as deliberate

indifference sufficient to establish municipal liability.  See

Thomas v. Cumberland Cty., 749 F.3d 217, 223, 226 (3d Cir.

2014).  "[F]ormulaic recitation of the elements [of municipal

liability] will not do."[2]  See McTernan, 564 F.3d at 659 (quoting

Phillips, 515 F.3d at 231).

        Accordingly, the motion of defendants to dismiss

Counts IV and V will be granted.

VI

        In Count VI of the complaint, Juisti alleges that

defendants Kirkland, Blair, Nolan, Gretsky, Lee, Shaw, and

_____

2.  In support of his municipal liability claim, Juisti cites
numerous news articles regarding the City of Chester.  One of
these articles, relying on anonymous sources, states that the
City Council of Chester rejected qualified Caucasian candidates
for police officer in favor of African Americans.  Here, Juisti
was hired by the City and thus any policy or practice relating
to hiring is irrelevant to his claims.  The remainder of the
articles deal with allegations of political corruption in
Chester, police brutality, sexual assault claims against an
officer, and a Department of Justice review initiated at the
request of the City on policing practices unrelated to
discrimination on the basis of race or disability.

Bothwell violated 42 U.S.C. § 1985(2).  That statute provides in

relevant part a cause of action for the recovery of damages

> if two or more persons conspire for the
> purpose of impeding, hindering, obstructing,
> or defeating, in any manner, the due course
> of justice in any State or Territory, with
> intent to deny to any citizen the equal
> protection of the laws, or to injure him or
> his property for lawfully enforcing, or
> attempting to enforce, the right of any
> person, or class of persons, to the equal
> protection of the laws.

42 U.S.C. § 1985(2).  In support of this claim, Juisti alleges

that defendants conspired to injure Juisti in his property, that

is, his compensation as a police officer, through intimidation

and retaliation as punishment for Juisti's filing and

prosecution of his EEOC complaints.  He also alleges that

defendants "conspired to impede, hinder, obstruct, and defeat

the due course of justice with intent to deny Plaintiff the

equal protection of the laws in connection with his racial

discrimination and retaliation claims."

A conspiracy, that is, an agreement to commit an

unlawful act, is a necessary element of a claim under § 1985.

Suber v. Guinta, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012)

(citing Gordon v. Lowell, 95 F. Supp. 2d 264, 270 (E.D. Pa.

2000)).  "An allegation of conspiracy is insufficient to sustain

a cause of action under [§ 1985]; it is not enough to use the

term 'conspiracy' without setting forth supporting facts that

tend to show an unlawful agreement." Id. (quoting Gordon, 95 F. Supp. 2d at 270).

Juisti's § 1985 claim fails because he has failed to allege sufficiently the existence of a conspiracy. Juisti has alleged that defendant Lee denied him overtime and favorable shifts and disciplined him, that Shaw called him names and also disciplined him, that Blair asked him to remove his sunglasses and criticized his work, that Gretsky approved his suspensions, and that Blair, Nolan, and Kirkland failed to stop the alleged harassment on the basis of race and disability. There are insufficient factual allegations in the complaint to suggest that these acts were taken as part of an intentional, concerted plot to deprive Juisti of the equal protection of the laws.

Accordingly, the motion to dismiss will be granted as to Juisti's claim under § 1985(2) in Count VI of the complaint.

VII

We turn next to Juisti's claim for intentional infliction of emotional distress in Count VII of the complaint. That tort is defined under Pennsylvania law as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Hoy

v. Angelone, 720 A.2d 745, 753 (Pa. 1998) (quoting Restatement (Second) of Torts § 46(1)).

To state a claim for intentional infliction of emotional distress, a plaintiff must aver that the defendant engaged in conduct that was clearly outrageous. Papieves v. Lawrence, 263 A.2d 118, 121 (Pa. 1970). Under Pennsylvania law, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. 1987) (internal citation and quotation marks omitted). In Hoy, the Pennsylvania Supreme Court provided examples of the type of conduct sufficient to permit a claim for intentional infliction of emotional distress. Those cases included intentionally framing the plaintiff for murder, burying the plaintiff's son in a field after striking him with a car and killing him, and knowingly issuing a press release stating that the plaintiff was suffering from a fatal disease. Hoy, 720 A.2d at 754.

"[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (citing Rinehimer

-19-

v. Luzerne Cty. Cmty. Coll., 539 A.2d 1298, 1305 (Pa. Super. 1988)); see also Shaner, 204 F.3d at 507. Courts applying Pennsylvania law have failed to find outrageous conduct "even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult." Cox, 861 F.2d at 395. Here, the gravamen of Juisti's complaint is that he was ridiculed, disciplined without merit, and denied favorable shifts to the point that he resigned his employment. Such conduct, while unfortunate, simply does not rise to the level of outrageousness required to state a claim for intentional infliction of emotional distress.

Accordingly, the motion of defendants will be granted as to Count VII of the complaint.

## VIII

In Count IX of the complaint, Juisti alleges a claim against defendants for civil conspiracy under Pennsylvania state law. To state such claim, a plaintiff must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Strickland v. Univ. of Scranton, 700 A.2d 979, 987–88 (Pa. 1997) (citation and internal quotation marks omitted). Here, the only violation of Pennsylvania law that Juisti has alleged against defendants is

intential infliction of emotional distress. As stated above,
we are dismissing that claim. Juisti has failed to allege any
other unlawful act under Pennsylvania law, or any lawful act
committed by means or for a purpose that would be unlawful under
Pennsylvania law.[3] Id.; see also Grose v. Procter & Gamble Paper
Prods., 866 A.2d 437, 441 (Pa. Super. 2005).

Accordingly, the motion to dismiss will be granted as
to Juisti's claim for state law civil conspiracy in Count IX.

IX

Finally, we turn to Juisti's claim in Count VIII of
the complaint against defendants Bothwell and the FOP for breach
of the state law duty of fair representation. Juisti asserts
that he filed numerous grievances with the FOP relating to his
suspensions and the City's allegedly discriminatory and
retaliatory actions against him. Nonetheless, the FOP and
Bothwell refused to address any of Juisti's grievances.

Under Pennsylvania law, a union bears a duty of fair
representation to its members. Falsetti v. Local Union No.
2026, United Mine Workers of Am., 161 A.2d 882, 895 (Pa. 1960).
"The fiduciary duty owed the member-employee is by the Union,
and not by its individual representatives." Falsetti, 161 A.2d

_____

3. We further note that any negligence-based state law claims
against the individual defendants would be barred by the
Pennsylvania Political Subdivision Tort Claims Act. See 42 Pa.
Cons. Stat. Ann. §§ 8541 et seq.

-21-

at 896.  As an individual union officer, defendant Bothwell may

not be held liable for any breach of the duty of fair

representation.  <u>See</u> <u>id.</u>  In his brief in response to the motion

to dismiss, Juisti does not challenge this point.  Accordingly,

Count VIII will be dismissed as to Bothwell.

A union such as the FOP has broad discretion in

determining whether to arbitrate an employee's grievance.

<u>Ziccardi v. Commonwealth</u>, 456 A.2d 979, 981 (Pa. 1982).  A

"union is not responsible for negligence in processing a

grievance"; rather, it is "only responsible to its members for

acts of bad faith with respects to a grievance."  <u>Martino v.</u>

<u>Transport Workers' Union of Phila.</u>, 480 A.2d 242, 250 n.12 (Pa.

1984).  In <u>Falsetti</u>, the Pennsylvania Supreme Court explained

the duty of fair representation as follows:

> The union's conduct must not be wilful,
> arbitrary, capricious or discriminatory.
> The union must not have declined to press
> the grievance out of laziness or prejudice,
> or out of unwillingness to expend money on
> behalf of non-members.  Its decisions with
> respect to individual grievances must have
> been honest and reasonable.  The rejection
> of a grievance by the union must have been
> on the merits, in the exercise of honest
> discretion and/or sound judgment, following
> a complete and fair investigation.  The
> rejection must not have been unjust in any
> respect.  There must not have been bad faith
> or fraud.

161 A.2d at 895 n.21 (internal citations and quotation marks

omitted).

In light of this standard, we find that Juisti's allegations that the FOP refused to address any of his numerous grievances are sufficient at this stage of the proceedings to state a claim for bad faith breach of the duty of fair representation. Further discovery is warranted to determine the terms of any relevant collective bargaining agreement as well as what investigation, if any, the FOP conducted regarding Juisti's grievances.

Relying on the Pennsylvania Supreme Court's decision in Martino, defendants assert that the only remedy available to Juisti for an alleged breach of the duty of fair representation is an order requiring the union to arbitrate Juisti's grievances. However, in both Ziccardi and Falsetti the Pennsylvania Supreme Court recognized that an employee may pursue a cause of action for damages against a union for failure to arbitrate where the employee has alleged bad faith. See Ziccardi, 456 A.2d at 981; Falsetti, 161 A.2d at 895-96. Martino did not eliminate an employee's action against a union for damages where a bad faith breach of the duty of fair representation is alleged. Instead, Martino stands for the proposition that an employee generally may not seek damages from an employer for breach of the duty of fair representation. 480 A.2d at 245; see also Plouffe v. Gambone, No. 11-6390, 2012 WL 2343381, at *10 (E.D. Pa. June 20, 2012). Under Ziccardi, an

-23-

employee cannot obtain money damages from the employer unless it is shown that the employer actively participated or conspired with the union to deny the employee's right to arbitration. 456 A.2d at 981-82.

Accordingly, the motion to dismiss Count VIII of the complaint will be granted as to defendant Bothwell but will be otherwise denied.

X

We will permit Juisti to proceed with his claim for reverse racial discrimination under Title VII against the City of Chester in Count I, his claim for disability discrimination under the ADA against the City in Count II, and his claim for retaliation under Title VII against the City in Count III of the complaint. We will also permit Juisti to proceed with his state law claim for breach of the duty of fair representation as to the FOP in Count VIII. In all other regards, the motions of defendants to dismiss the complaint will be granted.