```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH JUISTI                    :      CIVIL ACTION
                                 :
         v.                      :
                                 :
CITY OF CHESTER, et al.          :      NO. 18-2317
```

MEMORANDUM

Bartle, J.                                     September 20, 2019

  Plaintiff Joseph Juisti ("Juisti") brings this action against his former employer the City of Chester ("City") for reverse racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.  Juisti, at the time a police officer, also asserts a claim against his former union, defendant the Fraternal Order of Police William Penn Lodge No. 19 ("FOP"), for breach of the duty of fair representation under Pennsylvania common law.

  Before the court are the motions of defendants for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

                              I

  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). We view the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id. In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

II

Juisti, who is Caucasian, was hired in or about April 2013 as a police officer for the City of Chester Police Department. Juisti worked in this position until January 2018,

when he left work due to stress and anxiety stemming from perceived discrimination, retaliation, and harassment.

Juisti has asserted that during the course of his employment he was denied overtime, subjected to unwarranted discipline, and otherwise discriminated and retaliated against by his supervisor, Captain Marilyn Lee, who is African American. He also claims that he was discriminated and retaliated against by Police Commissioner Otis Blair ("Blair"), who is African American, Captain William Shaw, who is Caucasian, and Chester Mayor Thaddeus Kirkland, who is African American.

In 2013, Juisti suffered a stroke which made his eyes sensitive to light. As a result, he wears sunglasses both indoors and outdoors as needed and did so throughout his employment with the City. On August 21, 2017, Blair instructed Juisti that he could not wear while on duty the particular sunglasses he was wearing. The sunglasses at issue had white frames with prescription lenses. Blair stated that the white frames were unprofessional and made Juisti look like "the Terminator." Juisti contacted a sergeant to tell him he would be unable to work the rest of his overtime shift because he would need to purchase new sunglasses. Thereafter, Juisti returned to work with black-framed sunglasses and continued to wear sunglasses without incident as needed for the remainder of his employment with the City.

Blair admits that the City's official dress code does not specifically prohibit or otherwise address white-framed sunglasses but explained that as Commissioner he has final say on what is appropriate attire for officers and that he determined Juisti's sunglasses were inappropriate. Blair further stated in his deposition that he had previously seen Juisti wearing sunglasses with a more conservative black frame while on duty and never took issue with those.

At least three other officers, who are all African American and non-disabled, wore sunglasses with white or different colored frames while on duty: (1) Todd Rose; (2) Roosevelt Turner; and (3) Jerome Duncan. Blair instructed Turner and Duncan not to wear such sunglasses when Blair saw them doing so. Blair never spoke with Rose regarding his sunglasses but explains that he would have done so had he seen Rose wearing such sunglasses while on duty.

While employed by the City, Juisti belonged to the FOP. The Collective Bargaining Agreement ("CBA") entered into between the FOP and the City provides procedures for the resolution of grievances between FOP members and the City. Grievances must be presented within ten working days of the date that the incident occurred or the date the officer could reasonably be expected to have knowledge of the occurrence. An officer must first discuss the problem with his or her immediate

supervisor.  If the problem is not resolved to the officer's satisfaction, the CBA provides for a three-step "Grievance Procedure":  (1) a grievance shall be submitted by the officer in writing to the officer's immediate supervisor, who shall meet with the officer to discuss and then respond in writing within three working days; (2) if still not satisfied, the officer may appeal within five working days to the Chief of Police, who must then meet to discuss the grievance with the officer and then respond in writing within five working days; and (3) the officer may within five working days appeal any unsatisfactory response to the Mayor or his designee, who shall meet with the officer and then issue a decision within three days.[1]

If the grievance is not resolved through these steps, either party may elect, through written notice, to arbitrate the dispute with the American Arbitration Association ("AAA").  As an alternative to the grievance and arbitration procedures set forth in the CBA, the FOP and the City have developed a practice of informally resolving grievances through meetings.  The parties would wait for approximately 15-20 grievances to accumulate and would then meet to discuss and resolve the grievances.

---

1.  Grievances regarding disciplinary action other than an oral or written reprimand shall begin at step two of the process.

During the course of his employment, Juisti filed with the FOP eleven grievances raising disputes with his supervisors regarding the assignment of overtime shifts and also with regard to disciplinary matters. The FOP resolved through the informal meeting process four grievances in favor of Juisti. Under those settlements, the City agreed to pay Juisti retroactively for a number of overtime shifts. The FOP determined that two of Juisti's grievances lacked merit and declined to pursue them. The remaining five grievances, which were filed by Juisti in late 2016 through 2017 and concern issues related to the instant litigation, remain open. The City has taken the position that it will not consider these grievances until Juisti's claims in this action are resolved. Juisti has never requested that the FOP proceed to arbitration on any grievance.

III

As stated above, Juisti has brought a claim against the City of Chester for violation of his rights under the ADA. The ADA provides that "no [employer] shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). The ADA further provides that "discrimination" includes "limiting, segregating or classifying

-6-

a[n] . . . employee in a way that adversely affects the opportunities or status of such . . . employee because of the disability," and "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. §§ 12112(b)(l) and (b)(5)(A). Thus, the ADA covers claims for disparate treatment and for failure to accommodate.

To establish a prima facie case of disability discrimination, Juisti must produce evidence that: (1) he is a disabled person under the ADA; (2) he is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations; and (3) he has suffered an adverse employment action as a result of discrimination. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (citing Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)).

The City does not dispute that Juisti is a disabled person under the ADA by virtue of his stroke and resulting visual impairment and that he was otherwise qualified to perform the duties of his position as police officer. However, the City maintains that Juisti has failed to produce evidence that he suffered an adverse employment action as a result of

discrimination or was denied a reasonable accommodation.  We agree.

"[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (internal citation omitted).  As stated above, Juisti asserts that his rights under the ADA were violated when he was instructed by Blair on one occasion in August 2017 to wear different sunglasses after he came to work wearing a pair with white frames.  He thereafter wore different sunglasses to work.  Other than this one incident, Juisti was never challenged about wearing sunglasses at work from the time that he suffered his stroke until the time he left employment with the City in January 2018.  This one isolated incident did not alter the terms, conditions, or privileges of his employment or otherwise affect his opportunities or status as an employee. See 42 U.S.C. §§ 12112(a), (b)(1).  Thus, it is insufficient to constitute an adverse action under the ADA.

Nor has Juisti produced evidence that he was asked to wear different sunglasses because of his disability.  While he may disagree with Blair's assessment of what are appropriate sunglasses to wear at work, Juisti has not come forward with any proof that Blair was motivated by hostility or animus toward

Juisti because of his disability.  Instead, the evidence shows that Blair instructed other non-disabled officers not to wear sunglasses with white or other colored frames.[2]

To the extent Juisti asserts a failure to accommodate under the ADA, his claim also fails.  As stated above, Juisti was never refused permission to wear or was otherwise prevented from wearing sunglasses at any time in his employment, and on the one occasion in August 2017 he was simply instructed to wear a different style of sunglasses.  Juisti wore other sunglasses both before and after this incident as needed.  He has not produced evidence that white-framed sunglasses were specifically required to accommodate his disability or that it was a hardship to wear sunglasses with a different frame.  Thus, there is no evidence that Blair's instruction on one occasion to wear different sunglasses amounted to a failure to provide a reasonable accommodation under the ADA.

Accordingly, the motion of the City of Chester for summary judgment will be granted as to Juisti's claim for discrimination under the ADA asserted in Count II of the complaint.

---

2.  Juisti points out that these other officers were African American.  The race of these individuals is not relevant to his claim for disability discrimination under the ADA.

IV

We now consider Juisti's claim against his former union, the FOP, for breach of the duty of fair representation under Pennsylvania common law. According to Juisti, the FOP has breached its duty by failing to resolve satisfactorily numerous grievances he filed. As further evidence of the FOP's alleged bad faith, Juisti asserts that the FOP failed to secure payment from the City as compensation for several grievances that were resolved in Juisti's favor.[3]

Under Pennsylvania common law, a union bears a duty of fair representation to its members. Falsetti v. Local Union No. 2026, United Mine Workers of Am., 161 A.2d 882, 895 (Pa. 1960). A union such as the FOP has broad discretion in the execution of its duties. Ziccardi v. Pennsylvania, 456 A.2d 979, 981 (Pa. 1982); Connelly v. Steel Valley Educ. Ass'n, 119 A.3d 1127, 1134 (Pa. Commw. Ct. 2015). "Any substantive examination of a

---

3. Juisti also points to certain statements made by FOP President Randy Bothwell ("Bothwell"). Bothwell stated that the FOP would not accompany Juisti to a meeting with the City because Juisti had retained an attorney. However, the undisputed evidence shows that FOP Vice President Michael Dingler did, in fact, attend in support of Juisti. Bothwell also instructed other FOP members to document interactions with Juisti. However, Juisti explained in his deposition that the reason for Bothwell's statement was that everyone knew Juisti documented all of his conversations and was in the process of filing a lawsuit, and thus Juisti took "[n]othing" from the comment. Juisti further stated in his deposition that no FOP officer ever displayed hostility toward him. Given this testimony, we do not find these few comments to be evidence of bad faith.

union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991); see also Acosta v. Hovensa LLC, 529 F. App'x 297, 300 (3d Cir. 2013).

A "union is not responsible for negligence in processing a grievance"; rather, it is "only responsible to its members for acts of bad faith with respect to a grievance." Martino v. Transport Workers' Union of Phila., 480 A.2d 242, 250 n.12 (Pa. 1984). In Falsetti, the Pennsylvania Supreme Court explained the duty of fair representation:

> The union's conduct must not be wilful, arbitrary, capricious or discriminatory. The union must not have declined to press the grievance out of laziness or prejudice, or out of unwillingness to expend money on behalf of non-members. Its decisions with respect to individual grievances must have been honest and reasonable. The rejection of a grievance by the union must have been on the merits, in the exercise of honest discretion and/or sound judgment, following a complete and fair investigation. The rejection must not have been unjust in any respect. There must not have been bad faith or fraud. The bargaining agent must not have acted in a negligent manner.

161 A.2d at 895 n.21 (internal citations and quotation marks omitted).

As stated above, Juisti asserts that the FOP has breached its duty to him because it has failed to address five of his grievances. These grievances, which were filed in late 2016 through 2017, relate to the claims of discriminatory treatment that Juisti has asserted before this court. The City took the position that it would not consider these grievances while Juisti's discrimination claims were pending before the Equal Employment Opportunity Commission and now this court. The decision of the FOP to acquiesce to the City's request that these grievances remain open while this litigation is pending cannot be considered so arbitrary, capricious, or otherwise unreasonable to be considered outside the scope of its sound discretion. Falsetti, 161 A.2d at 895 n.21; see also Acosta, 529 F. App'x at 300. Moreover, there is no evidence that Juisti ever requested that the FOP proceed to arbitration on these grievances and that the FOP declined. Having slept on his rights under the CBA, Juisti cannot now assert that the FOP has breached its duty of fair representation.

Juisti also asserts that the FOP has failed to follow the formal grievance process outlined in the CBA and has failed to resolve his grievances in a timely manner.[4] However, the CBA

---

4. Juisti cites Article XVI of the FOP's Constitution and Bylaws, entitled "Grievances." The Constitution and Bylaws govern internal operations of the FOP. It is clear that the "Grievances" section addresses charges made against a FOP

merely outlines certain steps that the officer may take to pursue his or her grievance with an immediate supervisor, the Chief of Police, and the Mayor.  It further states that "[p]olice [o]fficers shall have the right to present their own requests and grievances" and that "a representative appointed by the [FOP] shall be given reasonable opportunity to be present." It does not impose upon the FOP itself any duty to initiate the grievance steps or otherwise to ensure that police management participate in the grievance process.  As noted above, Juisti could request under the CBA that the FOP proceed to arbitration against the City if dissatisfied with the handling of any of his grievances.  There is no evidence that he did so.

        In a similar vein, Juisti takes issue with the FOP's practice of resolving disputes between the City and its officers in informal meetings.  Given the wide discretion that a union such as the FOP possesses in fulfilling its duties, a reasonable juror could not conclude that the FOP's decision to pursue grievances in such a manner constituted a breach of its duty of fair representation.  See Ziccardi, 456 A.2d at 981; Connelly, 119 A.3d at 1134.  While Juisti may have preferred a different mechanism for resolving disputes, it is uncontested that a

---

officer or member by another officer or member, not disputes between the FOP and the City.

number of grievances were settled in Juisti's favor.[5]  The FOP did not employ this informal procedure for Juisti's grievances alone in a discriminatory or capricious manner but instead did so with regard to all grievances.  Juisti was aware of this practice at the time and thus cannot claim he was deceived or misled by the FOP.

Juisti further contends that the FOP breached its duty to him because he never received payment for the four grievances concerning overtime payment which were settled in his favor.[6] He, in fact, states that he never knew these grievances were resolved in his favor until discovery in this action.  Again, if Juisti was unsure of or dissatisfied with the outcome of any grievance, he could have requested that the FOP proceed to arbitration against the City.  He never did so and cannot now, years later, accuse the FOP of malfeasance with respect to the payment of settlements.  Moreover, the evidence shows that the

---

5.  As noted above, the FOP determined that two grievances lacked merit and thus declined to pursue them.  Juisti has not pointed to specific facts to dispute this determination.

6.  As evidence of nonpayment, Juisti has submitted his paystubs.  These paystubs show significant payments by the City for overtime, and there is no way for the court to determine what amount of overtime, if any, may have been paid as compensation for Juisti's settled grievances regarding the assignment of overtime.  The FOP states that, as far as it was aware, Juisti was paid for all of the settlements except for the one on which the FOP has filed an unfair labor practice charge against the City.  Regardless, we will assume for purposes of this motion that the City did, in fact, fail to pay Juisti for these settlements.

FOP has filed with the Pennsylvania Labor Relations Board an unfair labor practice charge against the City to enforce the terms of one of Juisti's grievance settlements. Given this evidence, a reasonable juror could not conclude that any non-payment by the City of these settlements amounted to a breach of duty by the FOP.

Simply put, Juisti has failed to produce sufficient evidence to create a genuine dispute of material fact as to whether the FOP has breached its duty of fair representation. Accordingly, the motion of the FOP for summary judgment on Juisti's claim in Count VIII of the complaint will be granted.[7]

V

After review of the record, we will deny the motion of the City of Chester for summary judgment on Juisti's claim for racial discrimination under Title VII asserted in Count I and on his claim for retaliation under Title VII asserted in Count III. There exist genuine disputes of material fact as to these counts.

---

7. Because we are granting summary judgment in the FOP's favor, we need not reach the issue of what type of remedy would be available to Juisti for such claim.